I respectfully dissent from the majority's decision to reverse the Deputy Commissioner's Opinion and Award. I agree with the Deputy Commissioner that plaintiff sustained a compensable injury by accident arising out of and in the course of her employment with defendant-employer. I would affirm the decision of the Deputy Commissioner.
The description of the incident in the majority's decision does not accurately describe the nature of the attack plaintiff experienced. Plaintiff credibly testified that as she approached the fence, the pit bull ran from the porch and began attacking her. The attack lasted approximately 30 seconds. Although plaintiff was not physically harmed during the attack, the dog did make contact with plaintiff and she was fearful for her life. The dog's face was near her own while it was jumping at her and trying to bite her. The dog had its mouth open and was circling plaintiff, constantly jumping up for her throat and arm area. Although plaintiff sprayed the dog repeatedly with mace, the dog did not retreat. After she opened her vehicle's door, the dog attempted to come under the door to attack her. At one point the dog jumped and tried to attack plaintiff through the vehicle's window. Plaintiff eventually was able to retrieve her tranquilizer gun from the back seat and used it on the dog, shooting out the window. Plaintiff had never before used the tranquilizer gun on an attacking animal. Also, although plaintiff called for assistance, no help was available. Plaintiff testified that during the attack she was very panicked, scared to death, and did not think she was going to "make it." When she talked to her supervisor after the attack, she told Mr. Allen that she "just nearly got ate alive." *Page 13 
In this case, the evidence showed that on December 5, 2003 plaintiff was performing her job duties for defendant-employer when the attack occurred. Plaintiff therefore sustained an injury which arose out of and in the course of her employment. N.C. Gen. Stat. § 97-2(6). An injury is compensable under the Workers' Compensation Act if it results from an accident that is "an unlooked for and untoward event which is not expected or designed by the person who suffers the injury." Adams v.Burlington Industries, 61 N.C. App. 258, 260, 300 S.E.2d 455, 456
(1983). An accident involves "the interruption of the routine of work and the introduction thereby of unusual conditions likely to result in unexpected consequences." Id. Plaintiff had worked in this job for approximately four years and had never been attacked by a vicious dog. Prior to the incident plaintiff had used pepper spray and a tranquilizer gun, but never as the result of being attacked by a dog.
The Court of Appeals in Calderwood v. Charlotte-Mecklenbury Hosp.Auth., 135 N.C. App. 112, 519 S.E.2d 61 (1999), disc. rev. denied,351 N.C. 351, 543 S.E.2d 124 (2000), stated that the fact that the job responsibilities of that injured worker, who was a hospital nurse in labor and delivery, included assisting patients who received epidurals resulting in a total block was not dispositive. "The question was whether her regular work routine required lifting the legs of women weighing 263 pounds who had received epidurals resulting in total blocks. . . ." Id. at 116, 519 S.E.2d at 63.
Therefore, the question for the Commission in the case before us is whether the regular work routine of this plaintiff, whose job responsibilities involved working with potentially aggressive animals, included being viciously attacked by a large pit bull, fighting it off by kicking and spraying it with mace, struggling with the dog while she retreated to her truck, and continuing to be under attack by the dog even after she reached her vehicle. Plaintiff *Page 14 
had never had to deal with a situation like this one before. Being unexpectedly attacked by a vicious animal was not part of plaintiff's usual work routine. She clearly was terrorized by the attack and her job performance after the attack changed drastically. Plaintiff's co-workers testified that she was an excellent employee until after the attack when she became fearful of large animals and had a drastic change in her personality and demeanor. Plaintiff had nightmares and flashbacks about the incident and became withdrawn and depressed.
In regard to plaintiff's disability as a result of the injury by accident, I would give greater weight to the expert testimony of Dr. Smith, who is a psychiatrist and who was plaintiff's treating physician, than to defendant's expert, Dr. Noble, a clinical psychologist who evaluated plaintiff on only one occasion. Dr. Smith causally related plaintiff's panic disorder and possible PTSD to the dog attack incident. Although it seems reasonable that plaintiff could work in employment in which she would not come in contact with large animals, as of Dr. Smith's deposition in early 2006 he continued to state that plaintiff was not capable of working in any employment. It appears that in the future plaintiff could return to some employment, with some vocational assistance and continued counseling. However, based upon Dr. Smith's testimony, plaintiff produced medical evidence that she is mentally incapable of work in any employment and therefore would be entitled to continuing temporary total disability compensation until further Order of the Commission or she returns to work. Russell v. Lowes Prod.Distrib., 108 N.C. App. 762, 425 S.E.2d 454 (1993).
For the foregoing reasons, I must respectfully dissent from the opinion of the majority in this case and would affirm the Opinion and Award of the Deputy Commissioner and award continuing disability compensation to plaintiff. *Page 15 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER *Page 1